IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ANNA M.,**
**Petitioner Below, Petitioner**

**v.) No. 24-ICA-239**   (Fam. Ct. Jackson Cnty. Case No. FC-18-2023-D-167)

**DESMOND M.,**
**Respondent Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Anna M.[1] appeals the Family Court of Jackson County's May 16, 2024, final order on her petition for the allocation of custody. The primary issues on appeal are whether the family court erroneously failed to appoint a Guardian ad Litem for the parties' child and whether the final order contained sufficient and accurate findings of fact. Respondent Desmond M. responded in support of the family court's decision.[2] Anna M. did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Anna M. ("Mother") and Desmond M. ("Father") share one child, R.M., born in 2023. On October 20, 2023, Mother filed a petition for the allocation of custody. In her petition, she alleged that Father had engaged in acts of domestic violence, pressured her to end her pregnancy, and informed the family court that there was an active Child Protective Services ("CPS") case involving the parties. She requested sole custody and decision-making responsibility for the child.

On January 25, 2024, there was an altercation between the parties and law enforcement was called. Although no charges were filed, law enforcement made a CPS

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Anna M. is represented by SaraBeth Jett, Esq. Desmond M. is represented by Cameron Blair, Esq.

1

referral. On January 26, 2024, the preliminary hearing was held on Mother's petition for allocation. At that hearing, the family court entered a temporary order granting Father some unsupervised parenting time.

On February 19, 2024, Mother filed a petition for ex-parte emergency custody, wherein she requested that Father only have supervised visitation, and a motion for the appointment of a Guardian ad Litem, neither of which were ruled upon. On March 13, 2024, the final hearing was held on Mother's petition for allocation. At that hearing, Mother testified that Father had committed multiple acts of domestic violence against her and presented photographs of her alleged injuries.[3] Father, on the other hand, testified that he had never been charged with domestic violence but admitted that he called Mother names and stated that he "knew his mouth was horrible." The family court also noted that Mother had tested positive for THC during her pregnancy, which caused CPS to get involved after the child's birth but that no abuse and neglect action was filed at that time.[4]

The family court entered its final order on Mother's petition for allocation on May 16, 2024, wherein it made the following relevant findings: (1) Mother admitted that she was not honest during the January 26, 2024, hearing; (2) Mother testified that she had been dishonest because she was intimidated due to Father's counsel being Father's brother-in-law with whom she shared a close relationship; (3) Mother's reasoning for her dishonesty was insufficient and did not excuse her dishonesty; (4) Mother's testimony was not credible; (5) Mother lied three times; (5) Mother's witnesses received their information only from Mother; (6) on one occasion, Mother initiated a meeting with Father at 4:00 a.m. in a secluded area; (7) there was no credible evidence of domestic violence, as both parties alleged it against each other; and (8) given the distance between the parties and Father's unpredictable work schedule, a 50-50 parenting plan was not practical. The family court

---

[3] During the final hearing, the following CPS workers testified on Mother's behalf: (1) Greta C. testified about her investigation, records she reviewed, and interviews she had with both parties; (2) Meloita R. testified about her investigation, records she reviewed, and efforts she made to interview Father; and (3) Linda B. testified that Mother actively and satisfactorily participated in DHHR services, that Father refused to cooperate, that Mother admitted she had been dishonest with her, and that Father was capable of being consistent with parenting.

Mother also attempted to enter photographs and a video into evidence. Father objected to their admission because Mother had only provided still shot photographs from the video to Father without providing the full video. The family court refused to enter them into evidence because the video had not been provided to Father in its entirety prior to the hearing.

[4] THC refers to Tetrahydrocannabinol, which is a psychoactive chemical found in cannabis.

granted Father parenting time on Saturday and Sunday from 7:30 a.m. until 5:00 p.m. until July 25, 2024, due to Mother's breastfeeding schedule. After July 25, 2024, Father was granted parenting time every weekend from Friday at 5:00 p.m. until Sunday at 5:00 p.m., in addition to two weeks of non-consecutive vacation time and holiday time. It is from the May 16, 2024, final order that Mother now appeals.

For these matters, we apply the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

Mother raises six assignments of error on appeal. Because some are closely related, they will be consolidated. *See generally Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (allowing consolidation of related assignments of error).

First, Mother asserts that the family court erred in disregarding evidence of domestic violence and in making the following findings of fact: (1) the relevant testimony from CPS workers, Greta C. and Meloita R., came only from Mother's statements; and (2) that Father actively and satisfactorily participated in services through the Department of Health and Human Resources and was released from said services. On this issue, Mother argues that the family court erroneously relied on Father's testimony and disregarded video evidence of her injuries caused by Father's domestic violence as well as evidence that Father was arrested and charged with domestic violence in 2023. We disagree.

The record reflects that although Mother alleged domestic violence against Father, she conceded during the hearing that she had been communicating with him, and on one occasion, met him in a remote location during early morning hours. During the March 13, 2024, hearing, Mother admitted that she had been dishonest in the prior hearing regarding her allegations against Father. Due to Mother's dishonesty, the family court found that, "[Mother's] blatant disregard for her oath to tell the truth renders the whole of her testimony incredible." The court further stated in its final order that "the [c]ourt is not saying domestic violence did not occur, but rather, there is no credible evidence before this [c]ourt that it did" and noted that both parties alleged domestic violence against each other. The Supreme Court of Appeals of West Virginia has consistently held that, "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive

function and task of the trier of fact." *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995). The final order reflects that the family court weighed both parties' evidence appropriately. Therefore, we conclude that the family court did not err in finding Mother's testimony less credible than that of Father.

In her second and fourth assignments of error, Mother contends that the family court erroneously failed to admit photographs and video evidence of Father's domestic violence against her, which precluded it from finding that domestic violence occurred as defined in West Virginia Code § 48-27-202 (2010).[5] We disagree. Pursuant to West Virginia Code § 51-2A-7(a)(1) and (6) (2013), "[t]he family court judge has the authority to manage the business before them" and "prevent abuse of process." Here, the family court properly disregarded evidence that had not been provided to Father ahead of time. Therefore, we cannot find that the family court abused its discretion on this issue.

Third, Mother argues that the family court erred in its failure to address her motion for the appointment of a guardian ad litem and by not appointing one to represent the minor child. We disagree. West Virginia Code § 48-9-302(a) states, "[i]n its discretion, the court may appoint a guardian ad litem to represent the child's best interests. The court shall specify the terms of the appointment, including the guardian's role, duties, and scope of authority." Although the family court should have addressed Mother's motion for the appointment of a guardian ad litem, we cannot conclude that its failure to do so was an abuse of discretion, as the overall decision of whether or not to appoint a guardian ad litem was within its discretion, per the above-cited statute. Therefore, we affirm the family court's decision on this issue.

In her fifth and sixth assignments of error, Mother asserts that the family court failed to give proper consideration to factors set forth in West Virginia Code §§ 48-9-102 (2022)

---

[5] West Virginia Code § 48-27-202 states as follows:

"Domestic violence" or "abuse" means the occurrence of one or more of the following acts between family or household members, as that term is defined in section two hundred four of this article:
(1) Attempting to cause or intentionally, knowingly or recklessly causing physical harm to another with or without dangerous or deadly weapons;
(2) Placing another in reasonable apprehension of physical harm;
(3) Creating fear of physical harm by harassment, stalking, psychological abuse or threatening acts;
(4) Committing either sexual assault or sexual abuse as those terms are defined in articles eight-b and eight-d, chapter sixty-one of this code; and
(5) Holding, confining, detaining or abducting another person against that person's will.

and 48-9-209 (2024) in making its custodial allocation. We disagree. West Virginia Code § 48-9-102, in providing guidance regarding the court's objective to seek the best interest of the child, states as follows:

> (a) The primary objective of this article is to serve the child's best interests by facilitating:
> (1) Stability of the child;
> (2) Collaborative parental planning and agreement about the child's custodial arrangements and upbringing;
> (3) Continuity of existing parent-child attachments;
> (4) Meaningful contact between a child and each parent, and which is rebuttably presumed to be equal (50-50) custodial allocation of the child;
> (5) Caretaking and parenting relationships by adults who love the child, know how to provide for the child's needs, and who place a high priority on doing so;
> (6) Security from exposure to physical or emotional harm;
> (7) Expeditious, predictable decision[-]making and avoidance of prolonged uncertainty respecting arrangements for the child's care and control; and
> (8) Meaningful contact between a child and his or her siblings, including half-siblings.
> (b) A secondary objective of this article is to achieve fairness between the parents consistent with the rebuttable presumption of equal (50-50) custodial allocation.

West Virginia Code § 48-9-209 then states that, "[w]hen entering an order approving or implementing a temporary or permanent parenting plan order, including custodial allocation, the court shall consider the following:" This section goes further to provide a list of factors the family court must consider. These factors include whether a party has abused or neglected a child or committed domestic violence and whether a 50-50 custody arrangement is impractical due to the physical distance between the parties' residences or the parties' daily schedules. Here, the family court found that: (1) at no point was the child in danger; (2) there was no credible evidence of domestic violence presented (as Mother was dishonest at least three times and both parties alleged domestic violence against each other); (3) Father's unpredictable work schedule made a 50-50 arrangement impractical; and (4) the distance between the parties' residences makes a 50-50 arrangement impractical. The family court maximized Father's parenting time by granting him parenting time on Saturdays and Sundays, the days that Father typically has off from work. *See* W. Va Code § 48-9-102a ("If the presumption is rebutted, the court shall, absent an agreement between the parents as to all matters related to custodial allocation, construct a parenting time schedule which maximizes the time each parent has with the child and is consistent with ensuring the child's welfare."). Therefore, we conclude that the family court gave sufficient consideration to the child's best interest, the limiting factors set forth in West Virginia Code § 48-9-209, and the requirement that, if the 50-50 custody

presumption is rebutted, the parenting plan must maximize the parenting time of each parent under West Virginia Code § 48-9-102a. The family court acted within its discretion and provided a thorough analysis for its decision.

Accordingly, we affirm the family court's May 16, 2024, final custody order.

Affirmed.

**ISSUED:** December 23, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear